IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

MAY 11 2011
CLERK, U.S. DISTRICT COURT

Kalvin Donnell Coward, )
    Plaintiff, )
)
v. ) 1:10cv147 (LMB/TRJ)
)
John Jabe, et al., )
    Defendants. )

## MEMORANDUM OPINION

Kalvin Donnell Coward, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2200cc et seq., by (1) refusing to recognize the Nations of Gods and Earths (NOGE or NGE)[1] as a religion, (2) avoiding proper procedures so as not to be required to recognize NOGE as a religion, (3) confiscating religious material entitled "The Harlem Six" from his mail, and (4) confiscating "Five Percenter literature" from his mail.

Plaintiff filed a Motion to Amend Complaint on June 6, 2010, which was granted by Order dated August 26, 2010 to the extent that plaintiff sought to supplement the claims in his original complaint with additional exhibits. Plaintiff then filed a Motion for Clarity of Claims and Correction of Record, in which he asked the Court to re-evaluate his Motion to Amend Complaint. The Motion for Correction of Record and Clarity of Claims was construed as a Motion for Reconsideration, in which plaintiff requested to add a claim of theological discrimination and also to add defendants. Plaintiff's Motion for Correction of Record and Clarity of Claims was denied to the extent that it sought to add R. Harrison, Randy Myers, Louis

---

[1] In his many pleadings, plaintiff has abbreviated the Nations of Gods and Earths as both NGE and NOGE.

1

B. Cei, Gary J. Clore, Michael Duke, and Gene Johnson as defendants because they were not amenable to suit.

On December 8, 2010, remaining defendants John Jabe, A. David Robinson, G.F. Sivels, Gregory L. Holloway, Clyde R. Alderman, R. Woods, and C. Hall filed a Fed. R. Civ. P. 56 Motion for Summary Judgment, arguing that plaintiff failed to exhaust administrative remedies for claims (1) and (2), and that claims (3) and (4) are without merit. Coward was given the opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and filed a response on February 3, 2011. For the reasons that follow, defendants' Motion for Summary Judgment will be granted.

## I. Background

Coward is currently incarcerated at Greensville Correctional Center (GCC) in Jarratt, Virginia. See Compl. 4, ECF No. 1. He "became a member of the Nations of Gods and Earths in 1995 and is a sincere student and advocate of the teachings of the Nations of Gods and Earths." Id. at 8. Coward claims that NOGE is "technically a religion" although members of NOGE do not refer to it as such. Id. He explains that, as a member of NOGE, plaintiff has the "duty and obligation to practice certain activities," which include, inter alia, "teaching others about the knowledge of who God is," observing holy days, and gathering with other NOGE members on a monthly basis to "make collective decisions and help one another learn their lessons." Id. at 9. Coward states that these activities are "compelled by, and central to the NOGE's teachings of the pathway to God through our God Centered Culture Nation." Id.

Coward contends that the defendants have placed a substantial burden on his right to practice and observe the central tenets of NOGE. Id. In claim (1), Coward explains that he submitted a "Request for DOC Recognition of Religious Group" on December 15, 2008 and later

2

filed informal complaints, grievances, and appeals seeking to add NOGE to the religious approval list. Coward explains that these complaints, grievances, and appeals were handled at various times by defendants Gregory L. Holloway, R. Woods, G.F. Sivels, and John Jabe, and that all of these requests were denied. Id. at 10-11.

In claim (2), Coward explains that he submitted another "Request for DOC Recognition of Religious Group" directly to defendant Holloway on March 1, 2009, and argues that Holloway did not follow the proper procedures to respect NOGE members' religious rights. Id. at 13-14. Coward asserts that the procedures were "intentionally and purposefully being twisted and ignored, for the purpose of curtailing the NGE's efforts to gain recognition and be approved within VDOC." Id. at 14-16. Coward filed another informal complaint, grievance, and appeal. Id. at 15-17.

In claim (3), Coward argues that his rights were violated when an article entitled "The Harlem Six" was taken from a letter he received from his brother on June 25, 2009. Id. at 18. Coward explains that "The Harlem Six" is "a history lesson" about the NOGE, such that removing the article "curtail[ed his] study in general and create[d] a substantial burden upon [him] to be in accordance with a central tenet of the NGE." Id. at 19. Coward filed an informal complaint and grievance about this issue. Defendant Clyde R. Alderman deemed the grievance to be unfounded, reasoning that even though the letter referenced an article, there was no way to determine whether the article had been enclosed with the letter. Defendant A. D. Robinson upheld this decision. Id.

Finally, in claim (4) Coward argues that his rights were violated when his incoming mail was confiscated on July 16, 2009 because it was three pages of Five Percenter literature, which is not approved correspondence. Id. at 19-20. Coward was never informed who sent the mail or

3

the address from which it came, despite filing an informal complaint, grievance, and appeal requesting that information, which were denied by defendants Holloway and Robinson. Id. Coward argues that Five Percenter materials cannot be considered contraband because that designation violates his rights as a member of NOGE, which was formerly known as the Five Percenters. Id. at 21.

Coward seeks injunctive relief "ordering the defendants to immediately refrain from all actions...that has [sic] placed the substantial burden upon Plaintiff, and all members of the NGE here at [Greensville Correctional Center], to observe and practice all of the tenets of our God Centered Culture (Religion) as described...[to] allow us the full cultural/religious freedom as all other approved religions by VDOC and that is set out in [RLUIPA]." Id. at 22.

## II. Standard of Review

In reviewing the Motion for Summary Judgment by defendants, courts must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is made and supported . . . [by affidavits], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33

F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988).

### III. Merits

RLUIPA provides that

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

See 42 U.S.C. §§ 2200cc et seq. Under RLUIPA, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion." See Lovelace v. Lee, 472 F.3d 174, 185-86 (4th Cir. 2006). Notably, the government must prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Id. at 186. Claims under RLUIPA are evaluated under the strict scrutiny standard. Id.

"[F]or RLUIPA purposes, a substantial burden on religious exercise occurs when a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Id. at 187 (citing Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981)). Even if a policy imposes a substantial burden on religious exercise, "the policy's burdens or restrictions could be justified by compelling considerations of security or good order." Id. at 189. The policy will be upheld if the government proves that it is the least restrictive means of furthering a compelling governmental interest, and courts "should apply this standard with 'due deference to the

5

experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources'" and treat security concerns with "particular sensitivity." Id. at 189-190 (citations omitted).

A. Claims (1) and (2): Defendants' Failure to Recognize NOGE as a Religion

Coward argues that the defendants violated his rights under the RLUIPA by (1) refusing to recognize the Nations of Gods and Earths (NOGE) as a religion, and (2) avoiding proper procedures so as not to be required to recognize NOGE as a religion.[2] Respondent argues that Coward failed to exhaust his administrative remedies as to these claims. See Mem. in Supp. at 5, ECF No. 29. In his reply, Coward explains in detail the numerous attempts he made to exhaust his administrative remedies.[3] In the interest of justice and in deference to Coward's pro se status, the Court will consider these claims on the merits.

In claims (1) and (2), Coward argues that the defendants' intentional refusal to recognize NOGE as a religion substantially burdens his religious exercise because Coward cannot meet with other NOGE members to "(A) teach[] others about the knowledge of who God is, (B) study the Supreme Mathematics, Supreme Alphabets, 120 Degrees, Universal Flag of Allah, Monthly

---

[2] To the extent that Coward alleges that defendants failed to follow proper VDOC procedures when refusing to recognize NOGE as a religion, he fails to state a claim of constitutional dimension. See West v. Atkins, 487 U.S. 42 (1988).

[3] Coward filed an Informal Complaint requesting a time slot for NOGE to hold services, which was rejected with the explanation that VDOC does not recognize NOGE as a religion within its prisons. When Coward then filed a grievance challenging VDOC's refusal to recognize NOGE as a religion, it was rejected at intake because "this was an issue different from that raised in the Informal Complaint." See Mem. in Supp. 4, ECF No. 29. Coward then filed an Informal Complaint and Grievance challenging VDOC's refusal to recognize NOGE as a religion within its prisons, which were refused because he filed the Grievance "on behalf of all inmates who adhere to NOGE at Greensville Correctional Center," and policy prohibits an inmate from filing grievances on behalf of other inmates. Coward appealed this decision, and it was upheld. Id. at 4-5.

6

National Statements, and Newspaper Periodicals, (C) observe holy days..., (D) conduct civilization classes..., and (E) gather monthly for 'Parliments' and 'Rallies,' during which members make collective decisions and help one another learn their lessons." See Compl. 9, ECF No. 1. Coward explains that all of these activities are "compelled by, and central to the NGE's teachings of the pathway to God through our God Centered Culture Nation." Id. Construing the facts in the light most favorable to Coward as appropriate for the purposes of this motion for summary judgment, the Court will assume that NOGE is covered by RLUIPA and that Coward is a sincere adherent. With these factual assumptions in mind, Coward has put forth sufficient facts to demonstrate that the defendants' refusal to place NOGE on the list of recognized religions is a substantial burden on Coward's religious exercise because he cannot partake in the activities listed above. Nevertheless, defendants' motion for summary judgment will be granted because the record shows that their actions constitute the least restrictive means of furthering the compelling governmental interest of security in the prison environment.

The NOGE, formerly known as the Five Percenters, see Compl. 21, ECF No. 1, is classified as a gang by VDOC. See Turner Aff. at 1, ECF No. 29-6. Courts have recognized the link between this group and prison violence even though group members claim that NOGE does not advocate violence. See, e.g., Fraise v. Terhune, 283 F.3d 506. 512 (3d Cir. 2002) (outlining the history of the Five Percent Nation, noting that the group is known to exist in Virginia, and summarizing evidence connecting the group to episodes of prison violence); In re Long Term Admin. Seg. of Inmates Designated as Five Percenters, 174 F.3d 464, 466 (4th Cir. 1999) ("[T]he designation of the Five Percenters as a Security Threat Group was a rational response to a threat to prison safety...."). VDOC has a "zero tolerance" policy for gang activity as defined by Virginia Code § 18.2-46.1. Id. This policy is motivated by the need to maintain security in

the prison environment. See Mem. in Supp. at 7, ECF No. 29. Therefore, the defendants have demonstrated that the NOGE is classified as a gang and not recognized as a religion because of security concerns related to this group.

Recognizing the "particular sensitivity" with which courts must treat prison administrators' decisions relating to security, the record demonstrates that VDOC's zero tolerance policy for gang activity is the least restrictive means of furthering the compelling governmental interest of security in the prison environment. See Lovelace, 472 F.3d at 189-90. Accordingly, respondent's motion for summary judgment will be granted as to claims (1) and (2).

B. Claims (3) and (4): Materials Confiscated from Plaintiff's Mail

Coward next argues that the defendants violated his rights under RLUIPA by (3) confiscating religious material entitled "The Harlem Six" from his mail, and (4) confiscating "Five Percenter literature" from his mail. Coward fails to demonstrate that either of these actions "put substantial pressure on [Coward] to modify his behavior and to violate his beliefs." See Lovelace, 472 F.3d at 187.

Coward argues that "[t]o take the article (Harlem Six) out of the envelope is to deny [him] the opportunity of a history lesson concerning the NGE and to curtail [his] study in general and create a substantial burden upon [him] to be in accordance with a central tenet of the NGE." See Compl. 19, ECF No. 1. As to claim (4), Coward argues that the fact that "Five Percenter literature is contraband/unauthorized is placing a blanket ban on the NGE, attempting to suppress our pathway to God." Id. at 21. However, he offers no facts that demonstrate that he felt pressure to modify his behavior and/or change his beliefs as a result of these materials being confiscated. Additionally, Coward has provided the Court with a copy of the Harlem Six article,

8

which indicates that he has had access to this article and his behavior has not been affected by his inability to obtain the copy that was allegedly enclosed with the letter from his brother. See Hall Aff. Ex. 1, ECF No. 38-1. Therefore, Coward has failed bear his burden of proving that the defendants' confiscating these materials substantially burdened Coward's exercise of religion, and respondent's motion for summary judgment will be granted as to claims (3) and (4).

## IV. Conclusion

For the reasons stated above, the defendants' Motion for Summary Judgment will be granted.[1] An appropriate Order and judgment shall issue.

Entered this 11th day of May 2011.

Alexandria, Virginia

/s/ Leonie M. Brinkema
United States District Judge

---

[1] Because defendants prevail on the merits, the Court declines to address any issues of qualified immunity. See Wilson v. Layne, 526 U.S. 603, 609 (1999) (establishing two-prong qualified immunity test, where courts must first determine whether the plaintiff alleged an actual constitutional deprivation).