IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

KALVIN DONNELL COWARD,           )
                                 )
        Plaintiff,               )
                                 )
    v.                           )    1:10cv147 (LMB/TRJ)
                                 )    Appeal No. 13-6060
JOHN JABE, Deputy Director of    )
    Operations (VDOC), et al.,   )
                                 )
        Defendants.              )

## MEMORANDUM OPINION

Kalvin Coward ("Coward" or "plaintiff"), a Virginia inmate
proceeding pro se, filed the instant civil rights action
pursuant to 42 U.S.C. § 1983, alleging that various state prison
officials (collectively, "defendants") violated his rights under
the Religious Land Use and Institutionalized Persons Act
("RLUIPA" or "the Act"), 42 U.S.C. § 2000cc-1 et seq.
Defendants have moved for summary judgment on all counts.  For
the reasons that follow, defendants' Motion for Summary Judgment
will be granted.

### I.  BACKGROUND

This being the fifth opinion to address plaintiff's claims,
only a brief recitation of the pertinent facts is required.
Plaintiff is a self-described sincere adherent of the Nation of
Gods and Earths ("NGE"), otherwise known as the "Five
Percenters," who observe the teachings of their founder Allah

and regard each black man as his own god.  See Pl.'s Mot. in

Opp. of Mem. in Supp. of Summ. J. Mot. ("Opp.") 3-4.  On

December 15, 2008, plaintiff submitted a request to the Virginia

Department of Corrections ("VDOC") for recognition of NGE as a

religious group.  A number of privileges attend such

recognition, including the right to hold communal services.

Defendants denied his request, citing NGE's existing

classification as a gang, which precludes members from

gathering, possessing written materials indicative of

membership, and "otherwise carry[ing] out gang activity."  After

receiving the denial, plaintiff pursued several informal

complaints, grievances, and appeals via administrative channels,

to no avail.

On February 17, 2010, plaintiff filed a complaint in

federal court against John Jabe, A. David Robinson, G. F.

Sivels, Gregory L. Holloway, Clyde R. Alderman, R. Woods, and C.

Hall, all of whom are VDOC officials.  See Compl.  Read

generously, plaintiff claimed that defendants' refusal to

recognize NGE as a religion violated RLUIPA, as did their

alleged failure to follow proper procedures in processing his

request.  Id.  In addition, plaintiff claimed that defendants

violated RLUIPA by confiscating from his mail an article

entitled "The Harlem Six," the contents of which are a history

2

lesson on NGE, and by confiscating separate Five Percenter
literature.  Id.

Defendants filed a motion for summary judgment on all four
claims, which the Court granted in an Order dated May 11, 2011.
In an accompanying Memorandum Opinion, the Court concluded that
defendants had successfully demonstrated that their policy of
classifying NGE as a gang rather than a religion was the least
restrictive means of furthering a compelling interest in prison
safety.  The Court also concluded plaintiff had failed to prove
that defendants had substantially burdened a religious exercise
by confiscating certain materials from his mail.  Plaintiff
appealed, and the Fourth Circuit vacated the Order on the
grounds that summary judgment was granted on a basis not raised
by defendants without sufficient notice to plaintiff; defendants
had not produced adequate record evidence demonstrating that
their refusal to recognize NGE as a religion was the least
restrictive means of furthering a compelling governmental
interest; and that a genuine dispute of material fact remained
as to whether the confiscation of plaintiff's materials imposed
a substantial burden.  See Coward v. Jabe, 474 F. App'x 961 (4th
Cir. 2012).

Upon remand, the action was stayed pending the outcome of
Versatile v. Johnson, 474 F. App'x 385 (4th Cir. 2012), aff'g

3

No. 3:09cv120, 2011 WL 5119259 (E.D. Va. Oct. 27, 2011).  In

Versatile, the Fourth Circuit summarily affirmed a district

court decision denying relief to an NGE member raising similar

RLUIPA claims against prison officials.  The district court

there adopted a magistrate judge's finding that the NGE member

"had failed to sustain his burden to show that his beliefs

[were] 'religious in nature' for the purposes of his particular

claim."  Versatile, 2011 WL 5119259, at *30.  The district court

also adopted the magistrate judge's finding that prison

officials had sufficiently proved that their regulations

regarding NGE materials were the least restrictive means of

furthering a compelling interest in prison safety.  Id. at *28,

*45.  Citing Versatile, this Court sua sponte granted

defendants' original motion for summary judgment, reasoning that

plaintiff's arguments were moot "[b]ecause it ha[d] been

determined that NGE is not a religion" for purposes of RLUIPA.

Plaintiff again appealed, and the Fourth Circuit again vacated

for failure to hold further proceedings; for "treating Versatile

as controlling authority that NGE is not a religion under RLUIPA

in all cases"; and for granting summary judgment on grounds not

raised by defendants without allowing plaintiff an opportunity

to respond.  Coward v. Jabe, 532 F. App'x 328 (4th Cir. 2013).

The Fourth Circuit directed that the parties be allowed "an

4

opportunity to supplement the summary judgment record with additional arguments and materials." Id. at 331.

Upon the second remand, this Court instructed defendants to file a revised summary judgment motion addressing the concerns expressed by the Fourth Circuit. Accordingly, on September 13, 2013, defendants filed the instant motion, relying on new arguments and new evidence (in the form of affidavits) regarding their refusal to recognize NGE as a religion and their policy of confiscating certain NGE materials. See Defs.' Mem. in Supp. ("Defs.' Mem."). On November 18, 2013, plaintiff filed a 44-page Opposition to defendants' revised motion.

## II.   DISCUSSION

The Court will address plaintiff's claims in two parts: grouping claims one and two, which together assert that defendants' intentional refusal to recognize NGE as a religion substantially burdens plaintiff's religious exercise, and grouping claims three and four, which separately assert that defendants also imposed a substantial burden by confiscating NGE materials from plaintiff's mail.

### A. Standard of Review

Summary judgment is appropriate where the record demonstrates "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Courts must view the record in the light most favorable to the nonmoving party, and must draw all reasonable inferences in its favor as well, see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 132 (4th Cir. 2002); however, "the mere existence of a scintilla of evidence in support of" the nonmoving party's position is insufficient, Anderson, 477 U.S. at 252; see also Othentec Ltd. v. Phelan, 526 F.3d 135, 140 (4th Cir. 2008). Accordingly, to survive a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate to support a jury verdict." Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995) (citation omitted).

## B. Refusal to Recognize NGE as a Religion

Plaintiff claims that defendants wrongly refused to recognize NGE as a religion and failed to follow proper internal procedures in doing so, in violation of RLUIPA. Defendants previously moved for summary judgment on these claims on the grounds that plaintiff had not exhausted his administrative remedies. Following this Court's request for supplemental briefing and evidence, defendants raised new grounds for summary

6

judgment, including that their decision to designate NGE as a gang precludes recognition as a religion because gangs "are not allowed to congregate, demonstrate indicia of membership, possess written materials that would indicate membership or otherwise carry out gang activity." Defs.' Mem. 15.  Defendants further argue that the gang designation is reasonable and "necessary to promote the compelling interest of prison security." Id. at 15; see also id. at 14, 16.  Plaintiff responds that the gang designation "should not be allowed to stand" because it is supported by insufficient evidence. See Opp. 39-41.

RLUIPA bars the government from imposing a "substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government can demonstrate that imposing such a burden furthers a "compelling governmental interest" by the least restrictive means possible. 42 U.S.C. § 2000cc-1(a).  Although Congress did not define the term "substantial burden," the Fourth Circuit has interpreted it as a burden that arises when "a state or local government, through act or omission, 'put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (quoting Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707,

718 (1981)).  A "religious exercise" in this context covers "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  42 U.S.C. § 2000cc-5(7)(A).

Under RLUIPA, a plaintiff bears the initial burden of proving by a preponderance of the evidence that he sought to engage in an exercise of religion and that the government substantially burdened his ability to do so.  See id. § 2000cc-2(b).  Only beliefs or practices that are sincerely held and religiously motivated fall within the purview of the Act, thereby excluding acts derived solely of personal conscience or philosophical conviction.  See Cutter v. Wilkinson, 544 U.S. 709, 725 n.13 (2005); Moore-King v. Cnty. of Chesterfield, 708 F.3d 560, 570-71 (4th Cir. 2013).  If the plaintiff establishes a prima facie case, the burden of persuasion shifts to the defendant to show that the challenged practice or policy is the least restrictive means of furthering a compelling governmental interest.  See 42 U.S.C. § 2000cc-2(b); see also id. § 2000cc-1(a).  Although this is a heavy burden, context matters in determining whether it has been met.  Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of cost and limited resources."

8

Cutter, 544 U.S. at 723 (internal quotation marks and citation omitted); Lovelace, 472 F.3d at 189-90; see also Couch v. Jabe, 679 F.3d 197, 201 (4th Cir. 2012) (noting that RLUIPA must be applied with special sensitivity to prison security concerns).

Plaintiff goes to great lengths to characterize NGE as a religion for purposes of RLUIPA. Whether he is correct or not is a particularly difficult question to answer for obvious reasons. See Harrison v. Watts, 609 F. Supp. 2d 561, 572 (E.D. Va. 2009). Perhaps unsurprisingly, courts routinely "bypass this question by assuming without deciding that . . . NGE constitutes a religion," meaning that there is "no controlling circuit precedent" on the issue. Id. at 573 & n.9; see also Coward, 532 F. App'x at 331 ("The district court erred by treating Versatile as controlling authority that NGE is not a religion under RLUIPA in all cases . . . ."). Because an answer is not necessary to the ultimate decision here, it is enough to join other courts in simply assuming that NGE constitutes a religion. Likewise, it is not necessary to decide whether defendants' refusal to recognize NGE as a religion imposes a substantial burden on plaintiff's exercise because NGE's well-documented connection to prison violence justifies defendants' actions in this instance.

There is ample evidence in the record to establish that defendants' classification of NGE as a gang — thereby precluding recognition as a religion — was reasonable and the least restrictive means of furthering a compelling interest in prison safety.  See 42 U.S.C. § 2000cc-2(b); see also id. § 2000cc-1(a).  The new affidavits submitted by defendants in support of their revised motion for summary judgment are especially persuasive.  The first is from Gary Clore, who is the Manager of the VDOC's Gang and Security Threat Group Unit and therefore bears responsibility for "provid[ing] direction to the VDOC in gang matters."  Aff. of Gary J. Clore ("Clore Aff.") ¶ 1.  Clore has testified as an expert witness in federal court on "matters pertaining to gang activities in Virginia prisons," including matters specifically pertaining to NGE.  Id. ¶ 2; see also Versatile, 2011 WL 5119259, at *18.  He has been familiar with NGE since the early 1990s, when he was a staff member at Powhatan Correction Center.  Clore Aff. ¶ 9.  Based on his extensive experience, Clore describes how NGE operates within prison walls as a "paramilitary organization" with altered clothing for identification, a clear "hierarchical structure similar to the military," and coordinated drilling in the recreation yard.  See id. ¶ 9.  These observations have led him to conclude that NGE "[was], and still [is], very much a

militant separatist group." Id. Clore also describes NGE's involvement in several specific incidents in VDOC facilities, including an assault on a guard at Red Onion State Prison and a general tendency to "take[] over [other groups'] authorized religious services." Id. ¶ 10.

NGE's violent nature is corroborated by the affidavit of Michael Duke, who is presently a Gang Specialist in the same Gang and Security Threat Group Unit. Duke's 17 years of employment with the VDOC includes positions as "a Corrections Officer, a Sergeant, a Lieutenant, and a Gang Coordinator at Greensville Correctional Center." Aff. of Michael Duke ("Duke Aff.") ¶ 1. He has been a Gang Specialist for the last seven years, as well as a member of the Virginia Gang Investigators Association ("VGIA") for the last ten. Id. In both capacities, Duke has trained criminal justice officials on gang issues, such as how to identify gang members. Id. He also possesses a deep knowledge of NGE in particular, having interviewed members, observed them in VDOC facilities, and even visited the organization's headquarters in New York City. Id. ¶ 3. Based on his unique expertise, Duke, like Clore, has concluded that NGE is "a separatist group that teaches racism." Id. ¶ 4. In support, Duke describes other incidents involving NGE, in which members "incited a group demonstration during the Rastafarian

Program" at Sussex II State Prison and separately "assaulted and stabbed a white offender in the chow hall" at Keen Mountain Correctional Center.  See id. ¶ 10.  Moreover, he points to clear indications of gang behavior, including "documented attempts by [NGE members] to recruit Bloods and attempts by the Bloods to recruit [NGE members]."  Id. ¶ 8.

In consideration of these and similar observations, the VDOC has classified NGE as a gang and therefore denied plaintiff's request for recognition as a religion.  Giving due deference to defendants' experience and expertise, see Cutter, 544 U.S. at 723, the Court concludes that their classification of NGE as a gang is eminently reasonable.  Defendants have produced more than sufficient evidence that NGE as a group poses a threat to prison safety by, among other things, provoking racial hostility, and in fact bears most hallmarks of a gang. Similarly, the Court concludes that defendants have carried their burden of showing that the classification is the least restrictive means of furthering a compelling governmental interest in prison safety.  See Couch, 679 F.3d at 201 (explaining that the burden of justifying a policy or practice in terms of security concerns is an "unremarkable step").  The nexus between the disputed classification and maintaining safe conditions for inmates and guards is obvious.  By restricting

group meetings and teaching materials, the VDOC has succeeded in causing NGE's membership to "drop[] tremendously[,] along with the [number of] incidents involving" NGE members. Duke Aff. ¶ 8. In addition, there is no less restrictive means of accomplishing this goal because the number of NGE members in VDOC facilities still exceeds one thousand, id., and their relative strength makes it impossible for the VDOC to adopt comparatively incremental measures. Significantly, plaintiff offers no evidence to rebut any of these points.

The Court's conclusions follow case law in this circuit and .others. "[C]ourts have consistently held . . . that restrictions placed on [NGE] practices do not offend . . . the Religious Land Use and Institutionalized Persons Act . . . ." Harrison, 609 F. Supp. 2d at 573 & n.10. Particularly relevant here, the Fourth Circuit has approved NGE's designation as a Security Threat Group in a different state prison system. See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 466-69 (4th Cir. 1999) (addressing an inmate's challenge under the First Amendment's Free Exercise Clause). The same is true of several federal courts nationwide based on a shared recognition of NGE's violent nature. See Harrison, 609 F. Supp. 2d at 573 n.11 (collecting cases).

13

Plaintiff denies any connection between NGE and prison violence and proceeds to argue that "defendants['] determination that NGE constitutes a gang should not be allowed to stand without VDOC officials providing a reliable marker that distinguishes a security threat group/gang from a God Centered Culture/religious group with some extremist members." Opp. 39-41.   To this end, plaintiff has appended to his Opposition multiple affidavits from fellow NGE members.[1]   The affiants collectively state that NGE is a coherent and legitimate belief system, that those beliefs do not condone violence or racism, and that they have not personally participated in acts of violence on behalf of NGE.   Like plaintiff, the affiants apparently concede that some NGE members have engaged in violence, even though they maintain it is not religiously required.   These affidavits do nothing to undermine the persuasiveness of defendants' affidavits, which specify numerous violent incidents and are the product of long-term observation in VDOC facilities.   Defendants' affidavits leave no doubt that NGE's connection with prison violence is real and significant notwithstanding abstract protests to the contrary.   In other words, plaintiff has failed to rebut defendants' reasonable

---

[1] The affiants are Shaikhi Teach Mathematics Allah, Lord Versatile, Allah King Wize Rallahamen Allah, and Coker Robinson, all of whom are currently incarcerated in VDOC facilities.

determination that classifying NGE as a gang rather than a religion is necessary "to maintain good order, security, and discipline" in Virginia prisons. Lovelace, 472 F.3d at 190. Summary judgment is therefore appropriate in favor of defendants on plaintiff's first two claims.

### C. Confiscation of Religious Material

Plaintiff also claims that defendants violated RLUIPA by confiscating certain NGE publications from his mail. Defendants previously moved for summary judgment on the grounds that plaintiff had failed to show that defendants' actions substantially burdened his religious exercise. This time, however, defendants have raised alternative grounds for summary judgment, including that their policy of reviewing and selectively confiscating NGE materials is the least restrictive means of furthering a compelling interest in prison security. See Defs.' Mem. 14-16. Defendants stress that there is no "blanket ban" on NGE materials, only a policy of reviewing publications individually to determine if the contents "indicate gang membership" in some fashion. Id. at 16.

Once again, there is ample evidence in the record — in the form of affidavits — to support defendants' position. It is clear that the decision to confiscate materials from plaintiff's mail, including "The Harlem Six" newsletter and other Five Percenter literature, was related to valid prison safety goals.

15

To this end, Clore explains that NGE members are "known to use secret codes . . . to communicate and organize" within prison walls, often by way of the sort of materials that plaintiff seeks to keep here.  See Clore Aff. ¶ 8.  NGE members also use such materials to "recruit[] other gang members to join their gang," especially members of the Bloods.  Id. ¶ 10.  These security concerns are echoed by Duke, who notes that plaintiff's materials "are used to recruit new members, to prove membership, and serve as sources of codes."  Duke Aff. ¶ 6.  Specifically, memorizing them is "the means by which other offenders can become [NGE members]."  Id. ¶ 5.  Duke also describes possession itself as a problem because "visibility is strength" for gangs struggling to achieve preeminence in the prison environment. Id. ¶ 6.  Accordingly, in terms of prison safety, confiscating the materials in question is one way to decrease the risk of gang-related violence by interrupting organization and recruitment efforts.  Cf. Holley v. Johnson, No. 7:08cv00629, 2010 WL 2640328, at *6 (W.D. Va. June 30, 2010) (approving the same VDOC policy upon "conclud[ing] that the stated security interest in limiting the influence and growth of [NGE] among the VDOC inmate population is compelling").

The challenged policy is also the least restrictive means of furthering this interest.  Duke avers that "alternatives have

16

been considered and rejected," including allowing NGE members to elect segregated confinement as a trade-off for possessing forbidden materials, which is a logistical impossibility in view of the number of NGE members in the prison system. See Duke Aff. ¶ 7. Plaintiff responds that the policy cannot be the least restrictive possible given that the content of the materials in question does not pose a security threat. This argument fails for two reasons. First, plaintiff ignores the fact that possession alone is as problematic as the contents of any particular publication for reasons related to visibility and gang identification. More generally, defendants have not imposed a blanket ban on NGE materials, and only confiscate individual publications after determining that they pose some specific security risk, as they did here.

In sum, plaintiff has not brought forth any evidence to raise a factual question whether defendants have met their burden under RLUIPA.[2] Summary judgment is therefore appropriate in favor of defendants on plaintiff's third and fourth claims.

---

[2] In addition to failing to rebut defendants' evidence, plaintiff has not offered any affirmative evidence of his own — beyond naked assertions — suggesting that the policy in question imposes a sufficiently substantial burden on his ability to observe his NGE beliefs, even assuming that such beliefs are religiously motivated. In other words, the record contains no evidence that defendants pressured plaintiff into modifying his behavior or violating his beliefs by confiscating certain materials from his mail. See Lovelace, 472 F.3d at 187.

### III.   CONCLUSION

For these reasons, defendants' Motion for Summary Judgment will be granted by an appropriate Order to be issued with this Memorandum Opinion.

Entered this _10_ day of March, 2014.

Alexandria, Virginia

_____ /s/
Leonie M. Brinkema
United States District Judge