IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KALVIN DONNELL COWARD, | )<br>) |
| Plaintiff, | )<br>) |
| v. | )    1:10-cv-147 (LMB/MSN)<br>) |
| A. DAVID ROBINSON, Chief of<br>Corrections, et al., | )<br>)<br>) |
| Defendants | ) |

## MEMORANDUM OPINION

Before the Court is plaintiff Kalvin Donnell Coward's ("Coward" or "plaintiff") Motion for Attorney Fees and Expenses ("Pl.'s Mot. Fees") [Dkt. No. 242], in which plaintiff seeks an order awarding his counsel $388,967.50 in attorneys' fees and $31,255.00 in litigation expenses. Defendants A. David Robinson and Harold W. Clarke (collectively, "defendants") argue that the amount of plaintiff's request is unreasonable due to block-billing and vague entries, multiple timekeepers billing time for the same task, and that some portions of the request relate to irrelevant matters. For the reasons that follow, plaintiff's motion will be granted in part and denied in part, and counsel for plaintiff will be awarded a total of $338,268.30, consisting of $310,748.30 in attorneys' fees and $27,520.00 in expenses.

I. BACKGROUND

The factual and procedural background of this case is fully recounted in the Court's Memorandum Opinion. See Coward v. Robinson, No. 10-cv-147, 2017 WL 3699866 (E.D. Va. Aug. 28, 2017). In brief, plaintiff alleged that defendants, in their capacities as employees of the Virginia Department of Corrections, unlawfully impeded his religious exercise as an adherent of the Nations of Gods and Earths ("NGE" or "the Nation") in violation of the Religious Land Use

and Institutionalized Persons Act ("RLUIPA") and the First Amendment by refusing to recognize the NGE as a religion and instead designating it as a gang subject to the Department's zero tolerance policy. Id. at 1-2. Plaintiff filed his initial complaint pro se and litigated the case pro se for several years, during which the Court granted several dispositive motions in favor of defendants. Plaintiff successfully appealed the dispositive rulings, resulting in three remands. Id.

During his third appeal, the Fourth Circuit appointed pro bono counsel to represent plaintiff, who have voluntarily continued to represent plaintiff before this Court. Id.[1] Upon the third remand, the parties sought to resolve the case and plaintiff made at least two offers to settle without seeking attorneys' fees. See, e.g., Pl.'s Mot. Fees, Ex. 3; id., Ex. 6. As late as July 10, 2017, plaintiff offered to settle the litigation without seeking attorneys' fees, but the proposed settlement provisions were unacceptable to the Department. Ultimately the parties were unable to resolve their dispute. After a two-day bench trial, the Court found that defendants had violated plaintiff's rights under both the RLUIPA and the First Amendment, and ruled in favor of plaintiff on all counts.[2]

II. DISCUSSION

A. **Standard of Review**

Section 1988(b) allows a "prevailing party ... a reasonable attorney's fee as part of the costs" for claims brought under 42 U.S.C. § 1983 and RLUIPA. A party prevails for purposes of

---

[1] The Fourth Circuit initially appointed D. Zachary Hudson, of Bancroft PLLC, to represent plaintiff. When Mr. Hudson left Bancroft, the court ordered Mr. Robert Bernstein, another Bancroft lawyer who had entered an appearance at the appeal, to be substituted as counsel of record. Upon remand, Mr. Bernstein and a colleague, Christopher Michel voluntarily agreed to continue representing plaintiff on a pro bono basis. In October, 2016, Bancroft joined Kirkland & Ellis, LLP, where Bernstein and Michel continued to represent plaintiff, along with attorneys Michael F. Williams, Arun Avva, Emily Merki and Ross Powell.

[2] On August 28, 2017, the Court issued a Memorandum Opinion explaining its findings of fact and conclusions of law, [Dkt. No. 235], and the Clerk entered judgment in favor of plaintiff that same day, [Dkt. No. 237]. Neither party timely filed a notice of appeal.

§ 1988 if it secures "actual relief on the merits of [its] claim [that] materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." See Lefemine v. Wideman, 568 U.S. 1, 4 (2012). When a party obtains complete relief, counsel should receive "a fully compensatory fee." Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 174-75 (4th Cir. 1994).

Once a court determines that the prevailing party is entitled to attorneys' fees, the court must then determine whether the requested attorneys' fees are reasonable. To calculate an appropriate award, "a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Services, LLC, 560 F.3d 235, 243 (4th Cir. 2009) (citing Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008)). The "fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The applicant should exercise 'billing judgment' with respect to hours worked, and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Id. (internal citations omitted). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." Id. at 433.

In evaluating "what constitutes a 'reasonable' number of hours and rate" for the work performed, "a district court's discretion should be guided by" the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and

ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson, 560 F.3d at 243-44 (quoting Barber, 577 F.2d at 226 n.28). Some of these "factors may not have much, if anything, to add in a given case," but those "that do apply should be considered." In re Abrams & Abrams, P.A., 605 F.3d 238, 244 (4th Cir. 2010).

### B. Attorneys' Fees

Plaintiff seeks to recover $388,967.50 in attorneys' fees, relying on the hourly totals and rates reproduced below:

| Timekeeper | Hours Billed | Hourly Rate | Fees Requested |
| --- | --- | --- | --- |
| Attorney | 1617.50 | $193.50 | $312,986.25 |
| Senior Paralegal | 278.00 | $150.00 | $41,700.00 |
| Junior Paralegal | 274.25 | $125.00 | $34,281.25 |
| **Total** | **2169.75** | | **$388,967.50** |

Pl.'s Mot. Fees at 14.[3] Defendants argue that the number of hours is unreasonable because of overstaffing, block-billing, and duplicative work.

Defendants do not, and cannot, dispute that plaintiff is entitled to an award of attorneys' fees. Through this litigation, plaintiff secured complete relief on all of his substantive claims. See Reaching Hearts Int'l, Inc. v. Prince George's Cty., 478 F. App'x 54, 56-57 (4th Cir. 2012) (upholding an award of attorneys' fees under § 1988 for a RLUIPA claim); Project Vote/Voting for Am., Inc. v. Dickerson, 444 F. App'x 660, 661 (4th Cir. 2011) (holding that plaintiff who "successfully vindicated important First Amendment rights" are entitled to attorneys' fees). Indeed, the Court explicitly warned defendants about substantial "fees that might be paid should there be a ruling against the commonwealth [sic]." Hr.'g Tr. 18:24. Additionally, although

---

[3] Plaintiff has not provided a breakdown of the hours charged by each individual attorney or paralegal.

4

plaintiff's counsel represented him on a pro bono basis, the Fourth Circuit has recognized that "entities providing pro bono representation may receive attorney's fees where appropriate, even though they did not expect payment from the client." Brinn v. Tidewater Transp. Dist. Comm'n, 242 F.3d 227, 234-35 (4th Cir. 2001).

Similarly, the parties do not dispute that the hourly rates charged were reasonable. The Prison Litigation Reform Act ("PLRA") contemplates an hourly rate of "150 percent of the hourly rate established under [the Criminal Justice Act ("CJA")] for payment for court-appointed counsel." 42 U.S.C. § 1997e(d)(3). In the Eastern District of Virginia, from January 1, 2016 to May 5, 2017, the CJA rate was $129.00 per hour.[4] The CJA does not establish a rate for paralegal time, but multiple courts have concluded that paralegals may seek the same maximum rate as attorneys. See, e.g., Perez v. Cate, 632 F.3d 553, 554 (9th Cir. 2011); Duvall v. O'Malley, No. ELH-94-2541, 2016WL 3523682, at *14 (D. Md. June 28, 2016).

The fees sought are for a total of ten timekeepers, consisting of six attorneys at $193.50 per hour, two senior paralegals at $150.00 per hour, and two junior paralegals at $125.00 per hour. All these rates comport with the statutory rate under the PLRA, and are toward the low end of the guidelines adopted in Vienna Metro LLC v. Pulte Home Corp., No. 1:10-cv-502, Dkt. No. 263 (E.D. Va. Aug. 24, 2011), which have been used in a variety of decisions in this district. See, e.g., BMG Rights Mgmt. LLC v. Cox Cox Comms., Inc., 234 F. Supp. 3d 760, 770-73 (E.D. Va. 2017), appeal filed No. 17-1353 (4th Cir. Mar. 20, 2017). According to those guidelines, in 2011, reasonable rates included $130-350/hour for paralegals; $250-425/hour for lawyers with 1-3

---

[4] Effective May 5, 2017, the CJA rate increased to $132.00. See Alexandria Criminal Justice Act Panel, Payment Rates, http://www.vaed.uscourts.gov/cja/Alexandria%20CJA.html. Although the trial in this case took place after the increase became effective, plaintiff's counsel seek a fee award "based on the earlier, lower rate in order to minimize disputes over fee litigation." Pl.'s Mot. Fees at 14.

years of experience; $350-600/hour for lawyers with 4-7 years of experience; $465-640/hour for lawyers with 8-10 years of experience; $520-770/hour for lawyers with 11-19 years of experience; and $505-820/hour for lawyers with 20+ years of experience. Id. at 12. There is no basis for contesting the charged hourly rates, and the Court finds that these rates were reasonable.

After determining that the hourly rates were reasonable, the Court must determine whether the number of hours (2169.75 hours in total) were reasonable. In addition to submitting its billing records, which identify the tasks that make up those 2169.75 hours and the respective timekeeper charging for each entry, plaintiff points out a variety of actions by defendants that drove up the number of hours needed. For example, defendants refused multiple offers to accept plaintiff's settlement position, which included plaintiff not seeking to recover his attorneys' fees. See Pl.'s Mot. Fees at 10-11. The Fourth Circuit has recognized that courts properly "conside[r] a [party's] rejection of a settlement offer as one factor affecting" what constitutes a reasonable fee. Sheppard v. Riverview Nursing Ctr. Inc., 88 F.3d 1332, 1337 (4th Cir. 1996). Additionally, defendants failed to communicate promptly with plaintiff's counsel, and refused to accept service of process for trial subpoenas for defendants' own witnesses, substantially increasing the hours billed. Id.[5] Finally, plaintiff cites to another recent PLRA case against the same defendants in which the court awarded fees of $1,500,000.00, far in excess of the amount plaintiff seeks to recover. See Scott v. Clarke, No. 3:12-cv-36, 2016 WL 452164, at *18 (W.D. Va. Feb. 5, 2016).

The first, second, eighth, tenth, eleventh, and twelfth Johnson factors support plaintiff's fee request. This litigation required substantial time and labor on the part of plaintiff's counsel. Defendants' choice to repeatedly rebuff settlement offers necessarily increased the time spent

---

[5] Further, plaintiff maintains that he is excluding a total of 513 hours spent on this case in an exercise of reasonable billing judgment. See Pl.'s Mot. Fees at 11.

litigating these issues. The plaintiff's inmate status made representation more difficult because counsel had to work within restrictions imposed by the PLRA. See, e.g., Duvall, 2016 WL 3523682, at *14. The eighth Johnson factor, which considers the results obtained, weighs heavily in counsels' favor. They obtained complete relief, not only for plaintiff, but for NGE members throughout the Virginia correctional system. Such substantial success suggests that the award should be fully compensatory. With respect to the tenth factor, which contemplates the undesirability of the case, this case was inherently undesirable before plaintiff's counsel became involved. Three dispositive motions had been decided against plaintiff, and as plaintiff's counsel points out, numerous nationally recognized legal-services organizations and a number of scholars considered the case "hopeless." See Pl.'s Mot. Fees at 10 (citing Ellie Silverman, Prison officials in Virginia consider this group a gang. A judge disagreed., WASH. POST., Sept. 3, 2017, https://www.washingtonpost.com/local/public-safety/prison-officials-in-virginia-consider-this-group-a-gang-a-judge-disagreed/2017/09/03/9eb68e2e-8e67-11e7-91d5-ab4e4bb76a3a_story.html). The eleventh factor addresses the nature and length of the professional relationship with the client. Here, plaintiff's counsel voluntarily agreed to continue representing plaintiff in this court, after their appointment ended with the resolution of the third appeal. Finally, with respect to the twelfth factor, which considers awards in similar cases, in another PLRA litigation decided against defendants in this district, the plaintiff was awarded $1,500,000.00 in attorneys' fees. See Scott, 2016 WL 452164, at *18. Based on plaintiff's evidence, the Court finds that plaintiff's initial calculation of the lodestar figure is an appropriate starting point.

Defendants raise a number of particularized objections to specific entries in plaintiff's billing records. Defendants contend that the case was overstaffed, resulting in unnecessary and

duplicative billing and argue that any fee award should be reduced by at least 15%. Defs.' Opp. at 5. Further, defendants maintain that certain time entries contain vague descriptions and are block-billed, requesting an additional 20% reduction. Id. Finally, defendants take issue with a number of specific line-items, arguing they are irrelevant to the matter at hand and should not be recoverable. Id. at 8.

As an initial matter, defendants' argument that the case was overstaffed is unpersuasive. Although a court must be "sensitive to the need to avoid use of multiple counsel for tasks where such use is not justified," Rum Creek, 31 F.3d at 180, "[t]here is nothing inherently unreasonable about having multiple attorneys perform work," Page v. Va. St. Bd. of Elections, No. 3:13-cv-678, 2015 WL 11256614, at *9 (E.D. Va. Mar. 11, 2015) (quoting Am. Civil Liberties Union of Ga. v. Barnes, 168 F.3d 423, 432 (11th Cir. 1999)). Indeed, in Rum Creek, the Fourth Circuit held that a district court abused its discretion in reducing a fee award partially based on overstaffing where "the litigation was vigorously contested . . . at every step," the plaintiff "was required to appeal twice . . . each time succeeding in its effort," and the plaintiff "substantially changed law enforcement policies." Rum Creek, 31 F.3d at 180. In this case, plaintiff's success resulted in a fundamental change of Virginia Department of Corrections policy with respect to NGE. In view of the complex constitutional issue involved in the case, the Court cannot conclude that this case was overstaffed.

The one case relied on by defendants that reflects a fee reduction for overstaffing is inapposite here. In Burns v. Anderson, a court applied a 15% reduction because the law firm sought nearly $900,000 in fees for work performed by "more than nineteen attorneys." No. 1:02-cv-132, 2006 WL 2456372, at *6 (E.D. Va. Aug. 22, 2006). In that case, there was no evidence that the multiple attorneys contributed in individual ways or that the work of the case

necessitated the use of so many attorneys. Id. In contrast, the declaration submitted by plaintiff's counsel in this civil action demonstrates that each of the six attorneys made specific contributions. For example, junior attorneys had primary responsibility for specific examinations of different witnesses, see Pl's Mot. Fees, Ex. A ("Powell Decl.") at 2, and took the lead on drafting motions and responses, id. at 3-4. The billing records confirm that each junior associate was involved with drafting separate motions and responses, and the preparation of separate witnesses. See, e.g., Pl.'s Mot. Fees, Ex. 5 at 8, 14, 18-21. Furthermore, for the majority of the case, plaintiff's counsel staffed only two attorneys; however, after defendants decided not to settle and discovery started, the additional staffing was needed. See Pl.'s Mot. Fees at 6. Under the specific facts of this civil action, simply having multiple attorneys working on the case does not justify reducing the requested hours.

The Court also finds that the activities that defendants object to as duplicative—namely internal communications and review of others attorneys' work—are recoverable. The billing records indicate that interoffice conferences normally lasted between fifteen minutes (0.25 hours) and an hour (1.0 hours). See, e.g., Pl.'s Mot. Fees at 3, 6-8, 14, 17. Moreover, nearly all of the conference entries indicate that the subject matter of these communications—strategy, discovery, witness development, and logistics—is compensable. "The realities of complex civil litigation necessarily entail such communication." Page, 2015 WL 11256614, at *10. Given that defendants vigorously defended their policy at all stages, the communication and thorough review of work product likely contributed to plaintiff's success in this case. The Court declines to reduce the fee award on this basis.

Defendants also claim that entries regarding discovery responses (a total of 36.25 attorney hours and 2 hours of senior paralegal time) are inadequate and do not demonstrate that

the hours billed were necessary. Defs.' Opp. at 16-17. Defendants argue that the substantive responses reflect minimal work and that only half the time should be recoverable. Id. The Court is unpersuaded. The records show that the majority of discovery work was done by a single attorney, E. Merki, with each entry adequately describing the work performed. See, e.g., Pl.'s Mot. Fees at 12-13. A total of 4.5 hours of attorney time was spent by the senior attorney, Bernstein, who had been on the case the longest, reviewing the work and finalizing objections to the requests. The 2 hours of paralegal time is adequately documented for proofreading the responses, and communicating with the attorneys. As discussed above, this type of internal review is often necessary in complex civil litigation and does not justify a fee reduction.

Moreover, defendants' interrogatories and requests for admissions were overly broad, including asking plaintiff to identify "any person who ha[s] knowledge . . . that [NGE] qualifies as a religion." See, e.g., id., Ex. 3 at 4. Plaintiff attempted to communicate directly with defendants about the scope of this kind of question, but did not receive any response. See Pl.'s Reply at 8-9. Counsel also lodged a formal objection with defendants about plaintiff being asked to admit "that '[he] do[es] not believe in a higher deity", Def.'s Opp., Ex. 2 at 2, but similarly received no response. Pl.'s Reply at 9. Given the breadth and nature of defendants' discovery requests, the resources plaintiff's counsel committed to discovery was not unjustified.

Defendants point to multiple entries referencing a Virginia FOIA request, arguing that this work was not relevant to the litigation. To the contrary, the FOIA request was an attempt by plaintiff to obtain plaintiff's inmate files, incident or disciplinary reports, and records of Department of Corrections investigations mentioning plaintiff, all of which are held by defendants. See Defs.' Opp., Ex. 1. Indeed, it was an attempt by plaintiff to follow the Court's instruction to move the case along "expeditiously." See [Dkt. No. 149]. Virginia law requires

that any public entity respond to such a request "in all cases" within five working days. See Va. Code Ann. § 2.2-3704(B). Defendants point to no authority establishing that plaintiff may not seek information relevant to his case outside of traditional discovery devices.

A thorough review of the submitted billing records convinces the Court that some of plaintiff's counsels' billing choices were unreasonable and should not be reimbursed. For example, plaintiffs' counsel often billed duplicative time for attendance at hearings and the trial. Even though attorneys "no doubt wish[] to be at the argument to witness the culmination of their efforts on [a] case, [a] client would not ordinarily pay for their presence when these attorneys are not necessary for the proceedings." BMG Rights Mgmt., 2017 WL 6000093 at *10 (quoting Fross v. County of Allegheny, 848 F. Supp. 2d 547, 555 (W.D. Pa. 2012)). Three of plaintiff's counsel attended a settlement conference, see, e.g., Pl.'s Mot. Fees, Ex. 5 at 8, three or more attorneys attended routine court hearings, see, e.g., id. at 16 (three attorneys and a paralegal were at the final pre-trial conference); id. at 24 (five attorneys appeared at the hearing on plaintiff's motions in limine), and six attorneys were present at trial, id. at 29.[6] Moreover, a number of these entries simply state "prepare for" or "attend" the respective hearing or trial. These descriptions are not sufficient to permit the Court meaningfully to determine whether the time claimed was reasonable. Cf. Salim v. Dahlberg, No. 1:15-cv-468, 2016 WL 2930943, at *12 (E.D. Va. May 18, 2016) ("Where [counsel's] descriptions do not apportion the time and do not demonstrate how much time was attributable to recoverable work, none of the time will be awarded.").

---

[6] These entries also show that each timekeeper was billing a different amount of time for attending the same meeting. For example, Mr. Williams states he spent a total of 6.5 hours travelling to and attending a settlement conference in Richmond, Virginia on March 31, 2017. Id. at 8. Mr. Bernstein charged 10.0 hours, and Mr. Powell charged 5.50 hours for the same conference. Id. These types of discrepancies further demonstrate that some billed hours may not be reasonable.

11

Defendants have also objected to counsels' use of block billing. Block billing is the "practice of grouping, or 'lumping,' several tasks together under a single entry, without specifying the amount of time spent on each particular task." Guidry v. Clare, 442 F. Supp. 2d 282, 294 (E.D. Va. 2006). Because block billing constitutes "inadequate documentation [that prevents] an accurate determination of the reasonableness of the time expended in a case," it is a proper basis for reducing a fee award. Id. Courts in this district have imposed ten and twenty percent reductions in fee awards to account for block billing. SunTrust Mortg., Inc. v. AIG United Guar. Corp., 933 F. Supp. 2d 762, 778 (E.D. Va. 2013); Project Vote/Voting for Am., Inc. v. Long, 887 F. Supp. 2d 704, 717 (E.D. Va. 2012).

Defendants are correct in observing that the time entries provided are replete with block billing. For example, a 10.75 hour entry on for E. Merki states

> [d]raft email summarizing case and courtroom decorum; revise Robinson cross examination; revise Born King Allah direct outline; witness prep with Born King Allah re direct examination; research and pull together case history for New Jersey policy changes; team call; communicate with K. Chervenak re exhibit labels; call with R. Bernstein to discuss trial logistics.

Pl.'s Mot. Fees, Ex. 5 at 28. This sort of compound billing is not exclusive to Ms. Merki's entries. Many of the records have similar entries that do not provide the Court with the ability to review them for reasonableness. Similarly, there are multiple entries that are so vague the Court cannot properly "weigh the hours claimed and exclude hours that were not 'reasonably expended.'" See Guidry, 442 F. Supp. 2d at 294 (citation omitted). The trial entries in particular simply state "attend first day of trial," "travel to Alexandria; attend trial" or even simply "trial day 1." See, e.g., Pl.'s Mot. Fees, Ex. 5 at 29. These obscure descriptions are inadequate to support a fee award. Accordingly, the Court will consider the lack of specificity and delineation,

and will exercise its discretion to reduce the total billable hours of counsel. See Abusamhadaneh v. Taylor, 2013 WL 193778, at *21 (E.D. Va. Jan. 17, 2013).

There also appear to be multiple entries referencing entirely unrelated matters. For example, there are three entries referencing a motion for application for admission to the Fifth Circuit Court of Appeals and for work on an amicus brief in that jurisdiction. See Pl.'s Mot. Fees, Ex. 5 at 3, 6. Plaintiff's counsel responds that plaintiff requested his attorneys to investigate the possibility of filing an amicus brief in that litigation; however, they do not identify the case at issue, and offer no explanation of how the case was related to this one. Simply because a client makes a request does not mean that the attorney's expenditure of time is reasonable for the purposes of recovering fees. There are also two entries from March 16, 2017 discussing "negligence research" and a "1151 claim." See id. at 6. These appear to have no relevance to this litigation and therefore are not recoverable.

Finally, plaintiff's counsel routinely billed for the time spent travelling to and from meetings with the client, a settlement conference in Richmond, Virginia, and court hearings, depositions, and trial. See, e.g., id. at 28-29. Although "necessary travel" is a recoverable expense, see Wheeler v. Durham City Bd. of Educ., 585 F.2d 618, 623-24 (4th Cir. 1978), travel time should not be recovered at the same hourly rate as "active legal work," Project Vote, 887 F. Supp. 2d at 715-16 (quoting Rosenberger v. Rector & Visitors of Univ. of Va., No. 91-0036-c, 1996 WL 537859, at *6 (W.D. Va. Sept. 17, 1996). These entries are often block-billed with other tasks, such as drafting affidavits, or conducting cross-examination. See, e.g., Pl.'s Mot. Fees at 8, 29. Because the Court cannot adequately distinguish between the time spent on travel and that spent on substantive matters some reduction is appropriate.

Having reviewed the relevant records, the Court determines that a 20% reduction to the requested fee amount reasonably accounts for the problems in plaintiff's counsels' billing. Therefore, the requested $388,435.37 will be reduced by 20%, yielding a total attorneys' fee of $310,748.30.

C. **Expenses**

In addition to attorney's fees, plaintiff seeks to recover $31, 255.00 in expenses, including services of technology specialists and library staff ($18,675.00),[7] and expert-witness fees ($12,580.00). The Fourth Circuit has held that a plaintiff entitled to attorneys' fees is also entitled to recover reasonable litigation expenses. Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986). These reasonable expenses include "supplemental secretarial costs, copying, telephone costs and necessary travel." Wheeler v. Durham City Bd. of Educ., 585 F.2d 618, 623-24 (4th Cir. 1978). A court, in its discretion, may also include expert-witness fees as part of the award. See Taylor v. Republic Servs., Inc., No. 1:12-cv-523, 2014 WL 325169, at *13 (E.D. Va. Jan. 29, 2014).

Defendants do not argue that these expenses are not recoverable; rather, they dispute the amount of expenses being sought for technology staff,[8] arguing that multiple entries for "preparing graphics," setting up "courtroom," and "support technology" are excessive, and that the requested hours include 13 hours of travel time to and from New York, N.Y. to Washington, D.C. See Defs.' Opp. at 17. In particular, defendants argue that billing 77 hours for "three days"

---

[7] Plaintiff acknowledges that it might have sought to recover these amounts as "fees" but chose to include them as "expenses" because the staff do not have titles resembling "paralegal" or "law clerk." See Pl.'s Mot. Fees at 17.

[8] There is no dispute over the amount of expert-witness fees, and based on the submitted records, these fees appear reasonable. Thus, the expert-witness fees requested will be awarded to plaintiff without a reduction.

14

of setting up "courtroom" and "support" technology is unrecoverable. Id. Defendants ask that the amount of recovery be reduced to no more than $5000. Id.

Plaintiff seeks recovery for a total 124.50 hours for "technology specialists and library staff" at a rate of $150.00 per hour.[9] Plaintiff proffers that these fees are below the customary rates charged and well within the market rates for the services. See Powell Decl. at 5. This amount allegedly excludes over $66,000 in expenses, including airfare and lodging for the support staff.

The Court agrees that the charged amount for technology staff appears to be excessive. The staff time records are overly generic and are block billed. For example, one entry bills 12.75 hours for "set up and support technology for use by legal team during upcoming trial in Alexandria, VA, per V. Higareda." Pl.'s Mot. Fees, Ex. 6 at 2. As to the staff travel expenses, the Fourth Circuit has made clear that "necessary travel" expenses are recoverable. Trimper v. City of Norfolk, Va., 58 F.3d 68, 75 (4th Cir. 1995); however, such expenses should be recovered at less than the rate for substantive work. Given that plaintiff acknowledges that it has excluded all actual transportation expenses, see Pl.'s Reply at 9, it appears that plaintiff is attempting to recover the cost for its staff members to travel to the courthouse for trial. But again, the Court is left without a means to determine if this time was adequately spent on work connected with this litigation. As such, a 20% reduction will be applied to the $18,675.00 claim for staff expenses. Applying this reduction, the amount to be awarded for staff expenses is $14,940.00, bringing the total amount of expenses, including expert-witness fees, to be awarded to $27,520.00.

---

[9] Defendants do not disagree with any entries related to the library staff expenses as unreasonable. These expenses included a total of 17.5 hours related to researching prison rules in several states referencing NGE and obtaining books, articles or archived versions of webpages. See Pl.'s Mot. Fees, Ex. 6 at 1. These fees appear reasonable and are recoverable under 42 U.S.C. § 1988. See Imaginary Images Inc. v. Evans, No. 3:08-cv-398, 2009 WL 2488004 at *2 (E.D. Va. Aug. 12, 2009).

III. CONCLUSION

For the reasons stated above, plaintiff's Motion for Attorney Fees and Expenses [Dkt. No. 242] will be granted in part and denied in part by an appropriate Order to be issued with this Memorandum Opinion, awarding plaintiff's counsel a total of $338,268.30, consisting of $310,748.30 in attorneys' fees and $27,520.00 in expenses.

Entered this 9th day of November, 2017.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge